IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ESTATE OF KATELYN HICKS, DECEASED, through Katelyn Hicks' Personal Representative, William Dean Hicks | * * * * | PLAINTIFF |
| | * | CASE NO.: |
| VERSUS | * * | |
| MATHEW C. WALLACK, M.D. | * | DEFENDANT |

## COMPLAINT

**NOW INTO COURT** comes the Estate of Katelyn Hicks, deceased through her personal representative, William Dean Hicks, and shows as follows:

## PARTIES

1. The Plaintiff in this case is the Estate of Katelyn Hicks, deceased, through her personal representative, William Dean Hicks (hereinafter "Plaintiff"). At all relevant times herein, Katelyn Hicks was an adult resident of Mobile County, Alabama. The claims brought on behalf of are brought on behalf of the Estate of Katelyn Hicks, deceased, *inter alia*, pursuant to Alabama's wrongful death statute, Ala. Code Ann. Sec. 6-5-411, et seq.

2. The Defendant in this case is Mathew C. Wallack, M.D., (Hereinafter "Defendant") who is a resident of the Harrison County, in the State of Mississippi, and can be served with process at 13065 Riverwalk Circle, Biloxi, Mississippi 39532.

## JURISDICTION

3. The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 in that Plaintiff and Defendant's citizenship are completely

1

diverse and the amount in controversy, exclusive of interest and costs, exceeds Seventy-Five Thousand dollars ($75,000.00).

## VENUE

4. A substantial amount of the acts and/or omissions of which the Plaintiff alleges in this case occurred in Mobile County, Alabama. On October 26, 2009, Katelyn Hicks, while in Mobile, County, Alabama, ingested multiple prescription medications, causing an accidental overdose and her death in Mobile, Alabama. Thus, venue is appropriate in the United States District Court for the Southern District of Alabama, Southern Division. The accidental overdose was caused by Defendant negligently, recklessly, and wantonly prescribing numerous different prescription drugs to Katelyn Hicks which caused her untimely death.

## STATEMENT OF THE FACTS

5. This is a tragic case of a young woman at the beginning of her life that was unnecessarily and tortiously cut short.

6. In September 2009, Katelyn Hicks began seeing Dr. Matthew Wallack at his Pain Management Clinic in Ocean Springs, Mississippi. Katelyn had been suffering from severe migraine headaches. Prior to being seen by Dr. Wallack, Katelyn had sought conservative treatment from other medical health care professionals.

7. From the beginning of his treatment, Dr. Wallack was aware and specifically documented in his chart that Katelyn was on several other

medications including diphenhydramine and other narcotic analgesics and respiratory suppressing drugs.

8. Dr. Wallack initially diagnosed the potential cause of the headaches as a referred cervicogenic headache syndrome related to a cervical disc protrusion at the C6-C7 level of Katelyn's cervical spine. Accordingly, he treated Katelyn Hicks by administering four (4) separate epidural steroid injections between October 1, 2009 and October 19, 2009.

9. During one or more of these epidural steroid injections Dr. Wallack failed to use fluoroscopic guidance. Further, Dr. Wallack gave an epidural injection in to the C4-C5 disc space, despite the fact that an MRI showed this level to have normal pathology.

10. Dr. Wallack also gave Katelyn an epidural steroid injection at the C3-C4 level even though, on an MRI, this level was also without pathology.

11. On October 19, 2009, Dr. Wallack had a discussion with Katelyn Hicks and her family about prescribing Methadone and a duragesic patch (fentanyl) to address her severe headaches. Significantly, Dr. Wallack notated that Katelyn Hicks had a tendency to overuse medications. He also notated that the family was concerned about the risks of using Methadone to treat their daughter. Notwithstanding these stated concerns, and his specific knowledge of her taking other respiratory suppressing drugs, on October 19, 2009, Dr. Wallack simultaneously prescribed nineteen (19) Methadone pills and duragesic (fentanyl) patches. He told the family that they could be used together at the same time.

12. Prior to Dr. Wallack's October 19, 2009, prescribing Methadone and a duragesic patch, Katelyn Hicks had never taken Methadone nor used a duragesic patch.

13. Predictably, on October 26, 2009, Katelyn Hicks simultaneously took both the Methadone and the fentanyl patch as prescribed by Dr. Wallack. The combination of these powerful drugs proved to be fatal.

14. On October 26, 2009, Katelyn Hicks tragically died from an accidental mixed drug overdose. Her toxicology results showed that she was within the therapeutic levels of methadone and the fentanyl patch prescribed to her by Dr. Wallack. In other words, Katelyn Hicks followed Dr. Wallack's dosing orders and as a result died.

## COUNT ONE – MEDICAL NEGLIGENCE

15. The Plaintiff realleges all prior paragraphs and incorporates the same by reference as if fully stated herein.

16. Dr. Wallack, by prescribing Katelyn Hicks both Methadone and a fentanyl patch on October 19, 2009, deviated from the acceptable standard of care in that:

    (1) He failed to adequately consider and properly pursue alternative methods for management of Katelyn Hicks' pain before prescribing methadone and/or fentanyl;

    (2) He failed to properly perform epidural injections to Katelyn Hicks;

    (3) He negligently placed Katelyn Hicks on Methadone and fentanyl without consideration of any other prescription medications, including other narcotic analgesics and respiratory suppressing drugs he knew that she was taking;

(4) He negligently failed to calculate the correct dosages of fentanyl and methadone based on Katelyn Hicks' medical history, weight, and height;

(5) By prescribing Katelyn Hicks both methadone and a fentanyl patch, with both medications to be taken at the same time;

(6) By prescribing both methadone and a fentanyl patch based on and in addition to the medications that Katelyn Hicks was currently taking;

(7) By not clearly instructing Katelyn Hicks on how to take both the methadone and fentanyl patch with other medications;

(8) By leaving discretion to his patient and her family regarding the frequency of dosing of the fentanyl and methadone; despite his statement that she was known to overmedicate;

(9) By prescribing both Methadone and a fentanyl patch at the same time for the same patient;

(10) By failing to calculate dose conversion for all medications Katelyn Hicks was taking and prescribed on October 19, 2009 to correctly assess a dosage based on Katelyn Hicks' tolerance to opiates.

(11) By failing to warn and/or caution Katelyn Hicks against taking drugs together or drinking alcohol while taking any prescription medications.

17. As a sole and proximate cause of the above referenced deviations from the acceptable standard of care, on the part of Dr. Wallack, Katelyn Hicks died from an accidental overdose.

**WHEREFORE,** the Plaintiff seeks compensatory damages, non-economic damages, hedonic damages, and any other relief to which the Plaintiff is entitled in the premises.

### COUNT TWO – WANTONNESS, RECKLESSNESS AND WILLFULNESS

18. The plaintiff realleges all prior paragraphs and incorporates the same by reference as if fully stated herein.

19. The actions and inactions of Dr. Wallack as described above, were so careless and reckless as to constitute wantonness thereby entitling plaintiff to recover punitive damages and attorney's fees.

20. As a proximate cause of the wantonness, willfulness and recklessness of Dr. Wallack, the Plaintiff is entitled to recover compensatory damages, punitive damages and attorney's fees.

### COUNT THREE - WRONGFUL DEATH

21. The Plaintiff realleges all prior paragraphs and incorporates the same by reference as if fully stated herein.

22. Katelyn Hicks died as a direct and proximate cause of the negligence, wantonness and recklessness of Dr. Wallack's acts and omissions as set forth above.

**WHEREFORE**, the Plaintiff demands judgment against all Defendants for such amount of damages allowed by Alabama Law as a jury may award for the wrongful death of Katelyn Hicks, and for the cost of this action.

### PRAYER FOR RELIEF

23. The Plaintiff realleges all prior paragraphs and incorporates the same by reference as if fully stated herein.

24. Upon the trial of this case, it will be shown that Katelyn Hicks and the Estate of Katelyn Hicks was caused to sustain injuries, damages and death as a direct and proximate result of Defendant's conduct and Plaintiff will

respectfully request the Court and jury to determine the amount of damages Plaintiff has suffered and incurred.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that the Defendant be cited to appear and answer herein; that upon final trial herein, Plaintiff recovers damages as set forth above from Defendant, including allowing costs of Court, punitive damages, attorney's fees, and that Plaintiff have such other and further relief, both general and special, at law and in equity, to which Plaintiff may be justly entitled under the facts and attending circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all counts and issues so triable.

RESPECTFULLY SUBMITTED, this the 17th day of October, 2011.

> */s/ Ian A. Brendel*
> IAN A. BRENDEL (BRENI1866)
> Of Counsel
> Attorney for Plaintiff
> The Cochran Firm – Metairie, LLC
> One Galleria Blvd., Suite 2130
> Metairie, Louisiana 70001
> Phone: 504.309.5000
> Fax: 504.309.5007
> Email: ibrendel@cochranfirm.com