IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION


ESTATE OF KATELYN HICKS,        )
DECEASED. through Katelyn Hicks'  )
Personal Representative, WILLIAM  )
DEAN HICKS,                      )
                                 )
     Plaintiff,      )
                                 )
v.                               )      CIVIL ACTION NO. 11-00594-CG-N
                                 )
MATHEW C. WALLACK, M.D.,         )
                                 )
     Defendant.      )

REPORT AND RECOMMENDATION

     This action is before the Court on defendant's motion to dismiss for lack of

personal jurisdiction (docs. 9-10), which has been referred to the undersigned Magistrate

Judge pursuant to 28 U.S.C. § 636 (b)(1)(B) for entry of a Report and Recommendation.

The action is also before the Court on plaintiff's alternative request, asserted for the first

time on February 17, 2012 (doc. 22), that "in the event the Court determines that it cannot

exercise jurisdiction over Dr. Wallack, . . . that the District Court exercise its discretion

and transfer the matter to Mississippi." (Doc. 22 at 22). Upon reconsideration of the

defendant's motion, plaintiff's response in opposition thereto (doc. 13), defendant's

reply (doc. 15), plaintiff's objections (doc. 22) to the first Report and Recommendation

entered in this case on January 27, 2012 (doc. 19)[1], plaintiff's supplemental offer of

---

[1] In view of plaintiff's objection and proffer of evidence which contained arguments not
presented to the Court prior to February 17, 2012, the Report and Recommendation entered on
January 27, 2012 (doc. 19) was withdrawn on February 27, 2012 (doc. 25) and the defendant was
permitted to respond to plaintiff's new arguments.

evidence (doc. 23), defendant's response in opposition (doc. 26) to plaintiff's new arguments and evidence, plaintiff's reply (doc. 31), and all other pertinent portions of the record, it is the recommendation of the undersigned that the Court find insufficient contacts to confer personal jurisdiction over Dr. Wallack in Alabama but that, in the interests of justice and pursuant to 28 U.S.C. § 1631, this action be transferred to the United States District Court for the Southern District of Mississippi.  It is thus recommended that Dr. Wallack's motion to dismiss be **DENIED** and that plaintiff's alternative request to transfer be **GRANTED.**

I.      Factual and Procedural Background.

        This wrongful death action was filed by the Estate of Katelyn Hicks, deceased, through her Personal Representative, William Dean Hicks (collectively "Plaintiff"), on October 17, 2011.  Katelyn Hicks was an adult resident of, and died in, Mobile, Alabama, on October 26, 2009, after ingesting medication prescribed by the defendant.  Plaintiff specifically alleges that Katelyn's death was caused by an "accidental overdose" of multiple medications "negligently, recklessly and wantonly" prescribed by the defendant, Mathew C. Wallack, M.D ("Wallack").  (Doc. 1 at ¶ 4).  According to the Plaintiff, toxicology reports indicate that the levels of methadone and fentanyl in Katelyn at the time of her death were within the levels prescribed to her by Dr. Wallack.  (*Id*. at ¶ 14).

        Following an extension granted by the Court (doc. 6), Dr. Wallack filed the present motion to dismiss for lack of personal jurisdiction on November 30, 2011.  (Doc. 9)  Dr. Wallack states that he is a board certified neurologist and pain management physician, licensed to practice in the State of Mississippi.  Dr. Wallack  further maintains that  he conducts no business in the State of Alabama, does not maintain an office in the

State of Alabama, does not advertise in the State of Alabama, and has not committed any torts in the State of Alabama. (Id. at 2).[2] Dr. Wallack argues, in sum, that, because he has neither had sufficient contacts with Alabama nor directed any act toward Alabama with respect to the events at issue in this litigation, this Court cannot properly exercise either general or specific jurisdiction over this Defendant. (Id. at 2-3). Dr. Wallack further contends that he only treated Katelyn at his clinic in Mississippi. (Doc. 10 at 2).

Plaintiff filed a response in opposition on December 12, 2011, arguing, in sum, that "the known personal contacts Dr. Wallack has with the State of Alabama, are sufficient to exercise in personam jurisdiction over him in this matter." (Doc. 13 at 1). Plaintiff predicates this argument on the following:

A. Dr. Wallack holds a license to practice medicine in Alabama.

B. Dr. Wallack renewed his medical license to practice medicine in Alabama in 2008.

C. Dr. Wallack's Alabama medical license is a property right which bestows upon him all the protections Alabama provides to doctors.

D. Dr. Wallack's clinic is located 30 miles from the Alabama border.

E. Plaintiff selected Dr. Wallack because of: (1) his Alabama license; and proximity to his Alabama residence.

F. Dr. Wallack agreed to continuously treat Katelyn Hicks after he knew she was an Alabama resident.

G. Dr. Wallack provides medical care to Alabama residents.

_____

[2] Dr. Wallack alleges that "[t]he only clinic owned and operated by [himself] was located in Ocean Spring, Mississippi, and [he] resides in Biloxi, Mississippi." (Doc. 10 at 1). He further asserts that "[h]e has no contacts in Alabama, he conducts no business in Alabama, he owns no property in Alabama, he maintains no bank accounts in Alabama, he does not solicit business in Alabama or from Alabama residents, and he does not advertise in Alabama, and he has not committed any torts in whole or in part in the State of Alabama." (Id. at 1-2).

H. Katelyn Hicks filled Dr. Wallack's prescriptions in Alabama, and Dr. Wallack knew this.

I. Katelyn Hicks took the medication prescribed by Dr. Wallack in Alabama and Dr. Wallack knew this.

J. Dr. Wallack cannot deny that he has derived personal revenue from Alabama and/or its residents.

K. On October 26, 2009, Katelyn Hicks suffered and died in Mobile, Alabama, as a result of taking medications prescribed by Dr. Wallack, giving rise to the present Alabama wrongful death action.

(*Id*. at 3-4).

Dr. Wallack filed a reply on December 19, 2011, arguing that his Alabama medical license "played no role in the Plaintiff's claim beyond the Plaintiff's own self-serving statements made in his Affidavit." (Doc. 15 at 6). Dr. Wallack maintains that his practice is located solely in Mississippi and he "conducted no business in the State of Alabama, and certainly did not do so with respect to Katelyn Hicks." (*Id*. at 7).

On January 27, 2012, the undersigned entered a Report and Recommendation (doc. 19) that defendant's motion to dismiss be granted because plaintiff failed to establish that Dr. Wallack's contact with Alabama relates to plaintiff's cause of action, involved some act by which he purposefully availed himself of the privilege of practicing medicine in Alabama, or was such that he should reasonably have anticipated being haled into an Alabama court. *See* Posner, *supra*, 178 F.3d at 1220; DoxRX, *supra*, 738 F.Supp.2d at 1245.

On February 17, 2012, plaintiff filed a statement of objection (doc. 22) to the Report and Recommendation in which the following **new** arguments were advanced:

1.  Dr. Wallack contractually ordered Katelyn to fill her prescriptions in Alabama.

2.  Dr. Wallack personally called Deborah Hicks, Katelyn's mother, on October 13, 2009, to set up an appointment at his office in Mississippi. Dr. Wallack told Deborah Hicks to drive Katelyn from Alabama to his Mississippi office on October 13, 2009.

3.  Dr. Wallack ordered Katelyn to undergo an MRI in Alabama, to determine his course of action.

4.  Katelyn objects to the Report's failure to recommend that the matter be transferred to Mississippi rather than dismissed.

(Doc. 22 at 5-6)[3].  As to the last contention, it must be noted that plaintiff never requested that, in lieu of dismissal for lack of personal jurisdiction, this action should be transferred to Mississippi until such was asserted in the objections filed by the plaintiff on February 17, 2012 (doc. 22 at 6).

II.     Standard of Review

In deciding Dr. Wallack's motion to dismiss, the court is bound to accept the allegations of the Complaint as true and views the facts in the light most favorable to it. *See, e.g.*, Hill v. White, 321 F.3d 1334, 1335 (11th Cir.2003); Murphy v. Federal Deposit Ins. Corp., 208 F.3d 959, 962 (11th Cir.2000).  A plaintiff is required to allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955,

---

[3] In addition to the new arguments concerning personal jurisdiction, plaintiff also objected to the Report and Recommendation on the grounds that such was entered without an evidentiary hearing despite plaintiff having requested an evidentiary hearing in her opposition to Dr. Wallack's motion to dismiss.  (Doc. 22 at 9, *quoting* Doc. 13 at 16).  As the portion quoted by the plaintiff clearly indicates, plaintiff did not request a hearing of any sort but merely requested "leave to conduct limited discovery from Dr. Wallack to further flesh out the number, nature, and extent of his contacts with the State of Alabama."  (*Id.*).

167 L.Ed.2d 929 (2007). "A complaint may be dismissed if the facts as pled do not state a claim for relief that is plausible on its face." <u>Sinaltrainal v. Coca–Cola Co.</u>, 578 F.3d 1252, 1260 (11th Cir. 2009) (citing <u>Ashcroft v. Iqbal</u>, —— U.S. ——, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868, (2009)). A motion to dismiss for lack of personal jurisdiction should be "denied if the plaintiff has alleged sufficient facts to support a reasonable inference that the defendant can be subjected to the jurisdiction of the court." <u>Jackam v. Hospital Corp. of America Mideast, Ltd.</u>, 800 F.2d 1577, 1579 (11th Cir.1986) (citation omitted).

III. <u>Discussion</u>

Defendant moves to dismiss the complaint on the grounds that this court lacks personal jurisdiction over him. (Doc. 9) "The plaintiff has the burden of establishing a prima facie case of personal jurisdiction over a nonresident defendant." <u>Meier v. Sun International Hotels, Ltd.</u>, 288 F.3d 1264, 1268 (11th Cir. 2002). "When the issue of personal jurisdiction is decided on the briefs and accompanying evidence, but without a discretionary evidentiary hearing, a plaintiff satisfies his or her burden by demonstrating a 'prima facie case of jurisdiction'." <u>Ashton v. Florala Memorial Hosp.</u>, 2006 WL 2864413, *2 (M.D. Ala. Oct. 5, 2006), *quoting*, <u>Francosteel Corp., Unimetal-Normandy v. M/V Charm, Tiki, Mortensen & Lange</u>, 19 F.3d 624, 626 (11th Cir. 1994); <u>Madara v. Hall</u>, 916 F.2d 1510, 1514 (11th Cir. 1990).[4] "A plaintiff establishes a prima facie case

---

[4] It is within the court's discretion whether to hold an evidentiary hearing on a motion to dismiss for lack of personal jurisdiction. *Fed. R. Civ. P. 12(b) (2); see, e.g.,* <u>Madara v. Hall</u>, 916 F.2d 1510, 1514 (11th Cir.1990); <u>Bracewell v. Nicholson Air Servs., Inc.,</u> 748 F.2d 1499, 1504 (11th Cir.1984). Plaintiff has argued that the absence of an evidentiary hearing prevented her from uncovering evidence of "Dr. Wallack's contacts with Alabama insurance" (doc. 22 at 10, *citing* <u>Worthy v. Bartley</u>, 307 F.Supp.2d 1244 (M.D. Ala. 2004). Plaintiff has failed, however, to demonstrate that evidence concerning Dr. (Continued)

by submitting evidence sufficient to defeat a motion for judgment notwithstanding the verdict." *Id.*, *citing*, DeLong Equip. Co. v. Washington Mills Abrasive Co., 840 F.2d 843, 845 (11th Cir. 1988). "Plaintiff's burden in alleging personal jurisdiction is to plead sufficient material facts to establish the basis for exercise of such jurisdiction." Future Technology Today, Inc., v. OSF Healthcare Systems, Inc., 218 F.3d 1247, 1249 (11th Cir. 2000). "A federal court sitting in diversity may exercise personal jurisdiction to the extent authorized by the law of the state in which it sits." Meier, 288 F.3d at 1269.

A determination regarding whether this Court can exercise personal jurisdiction over a non-resident defendant, must follow a two-pronged analysis. *See* Sloss Industries Corp. v. Eurisol, 488 F.3d 922, 925 (11th Cir. 2007). As to the first prong, the Court must determine whether the state's long arm statute applies and provides personal jurisdiction over the defendant. *Id.*, *citing* Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 626 (11th Cir. 1996). Alabama's long arm statute, which was amended effective August 1, 2004, provides, in pertinent part:

> Basis for Out-of-State Service. An appropriate basis exists for service of process outside of this state upon a person or entity in any action in this state when the person or entity has such contacts with this state that the prosecution of the action against the person or entity in this state is not

---

Wallack's claims for reimbursement from plaintiff's insurance company (evidence which would most likely already be in plaintiff's possession by virtue of the medical bills she received) would create sufficient contacts to permit this Court to exercise personal jurisdiction over Dr. Wallack. In Worthy, the sole case relied upon by the plaintiff for this proposition, the Court did not conclude that the mere submission of such insurance claims constituted sufficient contacts with Alabama upon which to found personal jurisdiction but, instead, concluded that is was "the evidence of advertising in this case [which] establishe[d] that there are sufficient minimum contacts with the forum state even though the advertising reached communities both within and outside of Alabama, but not nationwide." 307 F.Supp.2d at 1248. Consequently, the undersigned finds that the record is sufficient and that no evidentiary hearing is required.

inconsistent with the constitution of this state or the Constitution of the United States; . . .

Ala.R.Civ.P. 4.2(b).[5]

As to the second prong of the analysis, the Court must "examine whether exercising jurisdiction over the defendant would violate the Due Process Clause of the Fourteenth Amendment, which requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction not offend "traditional notions of fair play and substantial justice." Sloss, 488 F.3d at 925, *quoting* International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). As applied to this case, "the two inquiries merge, because Alabama's long-arm statute permits the exercise of personal jurisdiction to the fullest extent constitutionally permissible." *Id*., *citing* Ala.R.Civ.P. 4.2(b); *see also*, J & M Associates, Inc. v. Callahan, 2011 WL 5553696, *2 (S.D. Ala. Nov. 15, 2011)(same).

A three part standard is then utilized to determine whether the minimum contacts requirement has been met :

> First, the contacts must be related to the plaintiff's cause of action ....
> Second, the contacts must involve some act by which the defendant
> purposefully avails itself of the privilege of conducting activities within the
> forum [.] Third, the defendant's contacts with the forum must be such that
> the defendant should reasonably anticipate being haled into court there.

---

[5] According to the Committee Comments to the Rule 4.2 Amendment:

> The structure of former 4.2 included a "laundry list" of types of conduct that would
> subject an out-of-state defendant to personal jurisdiction in Alabama, as well as
> containing the "catchall" clause now contained in new 4.2(b). Because the "catchall"
> clause has consistently been interpreted to go to the full extent of federal due process, . . .
> it is no longer necessary to retain the "laundry list" in the text of the Rule.

Ala.R.Civ.P. 4.2 cmt. (2004) (internal citation omitted).

Posner v. Essex Ins. Co., Ltd., 178 F.3d 1209, 1220 (11th Cir. 1999), *citing*, Vermeulen v. Renault, U.S.A., Inc., 985 F.2d 1534, 1546 (11th Cir. 1993); *see also*, DocRX, Inc. v. DOX Consulting, LLC ,738 F.Supp.2d 1234, 1245 (S.D. Ala. 2010)(same).

Jurisdiction may also be assessed in terms of being either "general" or "specific." "General jurisdiction applies where a defendant's activities in the forum state are 'substantial' or 'continuous and systematic,' regardless of whether those activities gave rise to the lawsuit.... A court has specific jurisdiction when a defendant has had few contacts with the forum state, but those contacts gave rise to the lawsuit." Leventhal v. Harrelson, 723 So.2d 566, 569 (Ala. 1998); *see also* Madara v. Hall, 916 F.2d 1510, 1516 n. 7 (11th Cir. 1990) ( "General personal jurisdiction arises from a party's contacts with the forum state that are unrelated to the litigation."); DocRX, 738 F.Supp.2d at 1246 (same).  Plaintiff does not contend or sufficiently allege that Dr. Wallack's activities in Alabama are either substantial or continuous and systematic but, rather, argues that Dr. Wallack is subject to specific jurisdiction based upon his activities associated with Katelyn's medical care.

"Specific jurisdiction focuses upon whether plaintiff's cause of action arises out of or relates to the non-residents' contacts with the forum state.  DocRX, 738 F.Supp.2d at 1246, *citing*,  Burger King Corp. v. Rudzewicz, 471 U.S. 462,  472 (1985)("Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this 'fair warning' requirement is satisfied if the defendant has 'purposely directed' his activities at residents of the forum ..., and the litigation results from alleged injuries that 'arise out of or relate to' those activities[.]").  Regardless of whether jurisdiction is alleged to be general or specific, the nexus between the defendant

and the forum state must arise out of " 'an action of the defendant [that was] purposefully directed toward the forum State'." Elliott v. VanKleef, 830 So.2d 726, 731 (Ala. 2002), *quoting* Asahi Metal Indus. Co. v. Superior Court of California, 480 U.S. 102, 112 (1987). "This purposeful-availment requirement assures that a defendant will not be haled into a jurisdiction as a result of 'the unilateral activity of another person or a third person'." *Id.*, *quoting* Burger King, *supra*, 471 U.S. at 475. *See also*, Bullion v. Gillespie, 895 F.2d 213, 216 (5th Cir. 1990)("Jurisdiction is improper if grounded in the unilateral activity of the plaintiff."); Unterreiner v. Pernikoff, --- N.E. 2d ---, 2011 WL 5842783, *2 (Ill. App. 5 Dist., Nov. 18, 2011)("A plaintiff may not 'lure' a nonresident defendant into a jurisdiction, and the mere 'unilateral action of the plaintiff in seeking and obtaining the service of the defendant cannot serve to satisfy the jurisdictional requirement' of minimum contacts."), *quoting*, Muffo v. Forsyth, 37 Ill.App.3d 6, 9-10, 345 N.E.2d 149 (1976)("[W]hen an Illinois resident seeks out treatment from a nonresident provider, the mere fact that the nonresident provider is aware that the Illinois resident 'would likely fill' the provider's prescription in Illinois is not sufficient to invest personal jurisdiction over the nonresident . . . because the Illinois resident 'was the motivating force for the relationship' and, having sought treatment in Missouri, could reasonably be required 'to return to Missouri to prosecute any actions arising out of that treatment'."). *See also*, Ashton v. Florala Memorial Hosp., 2006 WL 2864413, *8 (M.D.Ala.,Oct. 05, 2006), *incorporated by reference in* Ashton v. Florala Memorial Hosp., 2007 WL 1526837, n. 2 (M.D.Ala., May 24, 2007)(Held that "accepting out-of-state referrals does not equate purposeful availment."), *citing e.g*., Jaffe v. Julien, 754 F.Supp. 49, 53 (E.D. Pa. 1991) (unsolicited referral of business to an out-of-state lawyer

from an in-state Pennsylvania lawyer did not provide sufficient contacts to make the former amenable to suit in Pennsylvania); Soares v. Roberts, 417 F.Supp. 304, 307 (D. R.I. 1976) (treating patient "without taking any action to solicit [patient's] case" is not sufficient to establish jurisdiction).

Dr. Wallack argues, in sum, that he conducts no business in Alabama, does not advertise in Alabama, does not maintain an office in Alabama, has committed no tort in Alabama and, therefore, has not had sufficient contacts with Alabama to allow this Court to exercise general jurisdiction over him. The only clinic owned and operated by Dr. Wallack is located in Ocean Springs, Mississippi, and he resides in Biloxi, Mississippi. Dr. Wallack further argues that specific jurisdiction does not exist because all of his business with Katelyn Hicks was conducted in Mississippi pursuant to his Mississippi medical license[6] and was solicited by the plaintiff .

_____

[6] According to Dr. Wallack, the following constituted his only contact with Katelyn Hicks:

On or about September 21, 2009, the decedent, Katelyn Hicks, presented to Dr. Wallack's clinic in Ocean Springs, Mississippi upon the referral of a friend. Ms. Hicks presented with a three to four month history of intractable severe headaches which she rated as an 8/10 on average. Ms. Hicks also suffered associated neck pain. Ms. Hicks past medical history was notable for anemia, depression since the age of ten, psychiatric problems, and gastric bypass in 2004. Dr. Wallack preformed a nerve block on September 21, 2009, and cervical epidural steroid injections on October 1, 2009, October 9, 2009, October 14, 2009, and October 19, 2009, all in Ocean Springs, Mississippi. Also, on October 19, 2009, Dr. Wallack had a discussion in his office with Katelyn Hicks and her parents regarding the lack of effectiveness of the medications prescribed. Dr. Wallack wrote a low dose prescription of Methadone to be started at 2.5 milligrams a day, and the patient was given a prescription for nineteen pills. The Hicks expressed reluctance about using Methadone, and Dr. Wallack also wrote a prescription for ten Duragesic patches without refills. Dr. Wallack explained that Ms. Hicks was only to use the Duragesic patches if she decided not to have the Methadone prescription filled. In addition, Ms. Hicks was also given a prescription for Trazodone at 100 milligrams to be increased as tolerated up to a maximum dose for 300 milligrams. Ms. Hicks was scheduled for follow up in one week for re-evaluation.

On or about October 26, 2009, Katelyn Hicks died from a mixed drug overdose. The Plaintiff, Mr. Hicks, lodged a complaint against Dr. Wallack with the Mississippi State Board of
(Continued)

Plaintiff first argues that Dr. Wallack created a "continuous obligation" with Katelyn, an Alabama resident, when he accepted her as a patient even if he neither solicited her or treated her in Alabama. In support of this argument plaintiff relies, in part, on <u>Travelers Health Ass'n v. Virginia</u>, 339 U.S. 643, 648 (1950), for the proposition that "[w]here a non-resident defendant creates 'continuing obligations' between himself and residents of a forum, he manifestly avails himself of the privilege of conducting business there." (Doc. 13 at 7). The non-resident defendants in <u>Travelers</u>, however, systematically offered, advertised and promoted their certificates of insurance and other forms of securities to residents without obtaining the required State permits, thus violating Virginia law. The Supreme Court upheld the Virginia State Corporate Commission's jurisdiction to subject the defendants to cease and desist proceedings opining that:

> The Association did not engage in mere isolated or short-lived transactions. Its insurance certificates, systematically and widely delivered in Virginia following solicitation based on recommendations of Virginians, create continuing obligations between the Association and each of the many certificate holders in the state. Appellants have caused claims for losses to be investigated and the Virginia courts were available to them in seeking to enforce obligations created by the group of certificates.

339 U.S. at 648, *citing*, <u>International Shoe Co.</u>, supra, 326 U.S. at 320. As applied to the instant case, there is no evidence, or even a contention by plaintiff, that Dr. Wallack advertised or in any manner solicited patients from Alabama or practiced medicine at any

---

Medical Licensure who investigated the claim and ultimately dismissed the complaint against Dr. Wallack.

(Doc. 10 at 2).

location within the State of Alabama.  What plaintiff does contend is that he selected Dr. Wallack based upon his own independent research "for an Alabama licensed doctor in greater proximity to Katelyn Hicks' residence [than Birmingham, Alabama]";  that "plaintiff selected Dr. Wallack"; that Katelyn first saw and was treated by Dr. Wallack at his office in Ocean Springs on September 21, 2009, and thereafter on October 1, 9, 14 and 19, 2009, at the same location; and that Katelyn "filled Dr. Wallack's prescriptions in Alabama" and "took the medications prescribed by Dr. Wallack in Alabama"; and that Katelyn "suffered and died in Mobile, Alabama, as a result of . . .['an accidental mixed drug overdose']."  (Doc. 13 at 3-4; Doc. 1 at ¶ 14).

Plaintiff now adds the contention that a "Narcotic Medication Agreement" ("Agreement") which Dr. Wallack required Katelyn to execute establishes "Dr. Wallack's 'continuing obligations' and continuous involvement of the forum in the care rendered to Katelyn Hicks."  (Doc. 22 at 12).  This Agreement, however, constitutes nothing more than Katelyn's unilateral promise to abide by certain rules in the event that pain medication was prescribed or provided by Dr. Wallack. (Doc. 23-1 at 2).  Each numbered sentence of this document begins with such phrases as: "I understand . . .";  "I realize . . ." ; "I will not . . ."; or "I agree to . . .".  (*Id.*).  The Agreement concludes with the statement:

> I the undersigned attest that I fully understand and agree to all the above requirements and instructions.  I understand that failure to comply with the terms of this agreement may result in the withdrawal of all prescribed medication by the Provider [Dr. Wallack] and my discharge from the practice.

(*Id.*).  In contrast to the promises made by Katelyn in this document, there is simply no requirement that Dr. Wallack continue to provide medical care to Katelyn if she keeps her promises. (*Id.*).  In other words, while it may be true that Dr. Wallack would not have treated Katelyn without her agreement to abide by these rules, it cannot be said that Katelyn's promises regarding her use of pain medication actually required Dr. Wallack to provide medical care of any sort to Katelyn.  In addition, the selection of the singular pharmacy that Katelyn agreed to use to fill all prescriptions provided by Dr. Wallack was left entirely to Katelyn.  (*Id.* at ¶ 10).  Plaintiff has proffered no evidence that Dr. Wallack cared where Katelyn filled her prescriptions beyond the requirement that it be from a single pharmacy rather than permitting "Katelyn to shop around and risk purchasing more narcotic medication than prescribed." (Doc. 26 at 9).  Nor is there any evidence that Dr. Wallack received any specific benefit from Katelyn's choice of a Winn Dixie Pharmacy in Mobile.

Plaintiff also argues that Dr. Wallack's personal phone call to  Deborah Hicks, Katelyn's mother, on October 13, 2009, to set up an appointment at his office in Mississippi "provides additional evidence of a "continuing obligation" and involvement through solicitation of the forum." (Doc. 22 at 13).   By plaintiff's own admission, this phone call was solely in response to Deborah Hick's phone call on October 13, 2009, to "Dr. Wallack's office after Katelyn complained of severe pain." (*Id.*).  Consequently, it was Deborah Hick's who solicited Dr. Wallack's services and not the reverse.

Similarly, the inclusion in Dr. Wallack's medical "PLAN" for Katelyn to undergo a Cervical MRI (doc. 23-2 at 3) does not state any requirement that this test be performed

at any specific location. The mere fact that Katelyn chose to have her Cervical MRI

performed at Mobile Infirmary Center in Mobile, Alabama on September 24, 2009, and

that the report was sent to Dr. Wallack "as the ordering physician" from that hospital

does not constitute sufficient contacts to subject Dr. Wallack to personal jurisdiction in

Alabama. (Doc. 22 at 15). Plaintiff's attempts to distinguish Muffo, *supra*, is without

merit because it is based solely on plaintiff's contention that the "Narcotic Medication

Agreement" creates an continuing obligation and involvement by Dr. Wallack with

Alabama, which it does not for the reasons stated above.[7] Similarly, plaintiff's attempt to

distinguish Kennedy, *infra*, is based on the erroneous contention that "Dr. Wallack, by

ordering a Cervical MRI in Alabama, demonstrates a foreign act to have an effect in the

forum – Alabama." (Doc. 22 at 16-17). As stated above, it was plaintiff, not Dr.

Wallack, who chose the convenience of having the MRI performed in Mobile, Alabama,

instead of Mississippi.

The unilateral acts on the part of the plaintiff and/or Katelyn Hicks simply do not

constitute "action[s] of Dr., Wallack purposefully directed toward [Alabama]" as

required to vest this Court with jurisdiction. Asahi Metal, *supra*, 480 U.S. at 112 ("The

'substantial connection,' between the defendant and the forum State necessary for a

finding of minimum contacts must come about ***by an action of the defendant***

***purposefully directed toward the forum State.***")(emphasis in original). *See*, Burger

King, *supra*, 471 U.S. at 474 ("The unilateral activity of those who claim some

_____

[7] Plaintiff's contention that "Dr. Wallack, unlike the defendant in *Muffo*, ordered Hatelyn Hicks to fill the prescriptions in Alabama," (doc. 22 at 15) is a misstatement of the "Narcotic Medication Agreement" which merely required Katelyn to fill the prescriptions at one pharmacy totally of her own choosing.

relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State."), *quoting*, Hanson v. Denckla, 357 U.S. 235, 253 (1958).   There is no evidence, or contention, that Dr. Wallack required Katelyn to fill or take her prescription medications in Alabama rather than Mississippi, where the prescriptions were issued.[8]

Plaintiff's reliance on Kennedy v. Freeman, 919 F.2d 126, 128 (10th Cir. 1990) wherein the court found that the defendant "purposefully direct[ed] her foreign acts so that they ha[d] an effect in the forum state" is unavailing.   In Kennedy, the court noted that where  physician-patient relationships go beyond the boundary of the forum state, courts have developed "special rules ... to ensure that personal jurisdiction is asserted over a doctor only when she has purposefully availed herself of the privileges of conducting activities within her patient's state." 919 F.2d at 129.   While the Tenth Circuit concluded that jurisdiction existed over the defendant doctor because he "rendered his diagnosis to Kennedy in Oklahoma, through the mail, knowing its extreme significance and that it would be the basis of Kennedy's further treatment there," the court also acknowledged that no jurisdiction exists "when doctors who have essentially local practices become involved in another state not as a result of their intention to do so but, rather, as a result of the action of their out-of-states patients" *Id.*[9]   In the case at hand, Dr.

---

[8] Plaintiff's reliance on Oliver v. Brock, 342 So.2d 1, 3 (Ala. 1976), for the proposition that "[t]he doctor-patient relation is a consensual one wherein the patient knowingly seeks the assistance of a physician and the physician accepts her as a patient" (doc. 13 at 7) is to no avail because the mere existence of a physician-patient relationship does not vest jurisdiction in this Court absent minimal contacts by the non-resident physician with the State of Alabama. *See* Burger King, 471 U.S. at 475 ("This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, . . . or of the 'unilateral activity of another party or a third person'.")(internal citations omitted).

[9] Kennedy v. Freeman, 919 F.2d 126, 129 (1990), *citing e.g.*, Wright v. Yackley, 459 F.2d 287, 288-89 (9th Cir. 1972) (no jurisdiction in Idaho over South Dakota doctor who treated his patient in South (Continued)

Wallack did not render any diagnosis to any physician in Alabama that would be the basis of any further treatment in Alabama of Katelyn Hicks nor, as stated previously, did he require Katelyn to either fill or take her prescription drugs in Alabama.

Similarly, Worthy v. Bartley, 307 F.Supp.2d 1244 (M.D. Ala. 2004), does not support the contention that "Dr. Wallack's conduct, including his clinic's geographic location, is sufficiently directed at Alabama to establish minimum contacts." (Doc. 13 at 8). The Alabama federal court in Worthy , in concluding that a Georgia doctor was subject to jurisdiction in Alabama for an action arising out of a surgery performed in Georgia upon an Alabama resident, opined, in pertinent part:

> The evidence before the court is not merely that the Defendants had a telephone listing in a publication the distribution of which they did not control, but that advertisements were placed in the telephone directories that served both Columbus and Phenix City, as well as smaller nearby communities in both Georgia and Alabama.[FN1] In another publication that reached communities in both Georgia and Alabama, a Health Advantage Special Advertising Section in the *Columbus Ledger Enquirer* in January 2004, the Defendants advertised that they accept Blue Cross and Blue Shield of Alabama insurance. Similar statements were included in the advertisements published in the *Phenix Citizen & Smith's Station Good News*, announcing new physicians in the Defendants' business in 2003.
>
> FN1. Although the advertisements provided as evidence were published after the events in question began, the Defendants do not dispute that such advertisements were run during the time period in which Donna Worthy contacted the Defendants, and Donna Worthy has stated in her affidavit that she relied on an advertisements in the telephone directory.

---

Dakota and merely phoned a prescription refill into Idaho); McAndrew v. Burnett, 374 F.Supp. 460 (M.D. Penn. 1974) (no jurisdiction in Pennsylvania over New York surgeon where alleged negligent surgery occurred in New York and decedent subsequently moved to Pennsylvania and died there).

307 F.Supp2d at 1248. The <u>Worthy</u> court specifically concluded that "the advertising in this case, including pointing out the Defendants' acceptance of Alabama insurance, was a purposeful availment of business in Alabama and is sufficient to subject the non-resident physician Defendants to personal jurisdiction in Alabama." *Id*. at 1249. Consequently, unlike Dr. Wallack,[10] the defendant in <u>Worthy</u> clearly and "purposefully availed itself of conducting activities within the forum state" by advertising and soliciting patients. *Id*. In addition, the <u>Worthy</u> court, like the Tenth Circuit in <u>Kennedy</u>, emphasized that "in the context of doctor-patient litigation, rules have evolved to ensure that personal jurisdiction is asserted based ***not on random, fortuitous, or unilateral acts of the patients***, but on the doctor's own purposeful availment of the privileges of conducting business." *Id*. at 1248-49, *citing*, <u>Kennedy</u>, 919 F.2d at 129 (emphasis added).

　　　Plaintiff's contention that personal jurisdiction exists over Dr. Wallack is also not supported by <u>Cubbage v. Merchant</u>, 744 F.2d 665 (9th Cir. 1984), a case cited by the plaintiff, but one in which the Ninth Circuit predicated its finding of jurisdiction over the non-resident doctors on the fact that:

> Appellee [Arizona] doctors purposefully applied for a Medi-Cal number. Appellees invoked the protection of California law by placing themselves within the statutory safeguards provided health care providers seeking to settle grievances or complaints regarding unpaid Medi-Cal fees. *See* Cal.Welf. & Inst.Code § 14104.5 (West 1980). Under 14104.5, upon exhausting administrative remedies appellees may enter California courts to sue the state for monies owed. *Id*.; *see, e.g.*, <u>Royal Conval. Hosp., Inc. v. State Bd. of Control</u>, 99 Cal.App.3d 788, 160 Cal.Rptr. 458 (1979).

---

[10] Plaintiff's contention that Dr. Wallack "used the acceptance of Alabama Blue Cross Blue Shield to attract Alabama residents to his clinic" (doc. 13 at 9) is not supported by any allegation in the Complaint or evidence of record.

> Moreover, appellees each maintained a white pages listing in the Parker [Arizona] phone directory and the hospital maintained a yellow pages listing. Although a telephone listing, without further solicitation, is not enough in itself to confer jurisdiction, *see* Kennedy v. Ziesmann, 526 F.Supp. 1328, 1331 (E.D. Ky. 1981), the hospital took out a yellow page advertisement in the 1982 directory showing the hospital's logo and name in bold print. Below its name the caption reads: "24 HOUR EMERGENCY; PHYSICIAN ALWAYS ON DUTY; ACCREDITED ACUTE HOSPITAL; FULL SERVICES; MEDICAL & SURGICAL," followed by its address and phone number. The directories were distributed in the adjacent California area because of Parker's proximity to the border and the region's sparse population, and appellees were aware of the circulation coverage. Such circulation cannot be characterized as "random, isolated, or fortuitous." *See* Keeton v. Hustler Magazine, Inc., 465 U.S. 770, ----, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984).

744 F.2d at 668-69. Again, there is no contention that Dr. Wallack advertised in any manner calculated to solicit patients from Alabama. Nor is there a contention that Dr. Wallack sought an Alabama license in order to ensure he could collect payments he could somehow bill to the State of Alabama.

Plaintiff also argues that the mere possession of an Alabama license to practice medicine is sufficient to vest this Court with jurisdiction over Dr. Wallack, regardless of his contacts with Alabama. (Doc. 13 at 10-11). The fact that a medical license is a valuable property right, Katz v. Alabama State Bd. of Medical Examiners, 351 So.2d 890, 893 (Ala. 1977), does not, in and of itself, establish personal jurisdiction over the licensee. In Johnston v. Foster-Wheeler Constructors, Inc., 158 F.R.D. 496, 503 (M.D. Ala. 1994), the court held that "procuring a license to do business in Alabama alone may not authorize the exercise of *in personam* jurisdiction over the non-resident defendant," but then predicated its finding of jurisdiction on the fact that the non-resident defendant not only "acquired a license" but "continued doing business in Alabama after Plaintiff

was terminated."   According to the court in <u>Johnston</u>, jurisdiction existed over the non-

resident defendant because:

> The facts demonstrate that: the employment contract was entered in
> Florida; the job was principally localized in Florida; Plaintiff was injured in
> Florida; Plaintiff filed a claim for workmen's compensation benefits in
> Florida; Plaintiff was allegedly wrongfully terminated in Florida. However,
> even though this lawsuit stems entirely from activity which took place
> outside of Alabama, this court holds that Defendant could reasonably have
> foreseen being haled into court because it qualified to do business ***and
> performed construction work in Alabama*** and hired the Plaintiff, an
> Alabama resident, to work on the Florida construction site.

*Id.* (emphasis added).   Consequently, plaintiff's contention that Dr. Wallack's Alabama

medical license alone allows this Court to exercise in personam jurisdiction over Dr.

Wallack is without merit.   Absent other conduct demonstrating that he purposefully

availed himself of the privilege of practicing medicine in Alabama or actively solicited

Alabama residents as patients, Dr. Wallack's mere possession of an Alabama medical

license is insufficient to vest this Court with jurisdiction over this defendant.[11]

In summary, plaintiff has proffered no evidence that Dr. Wallack had continuous

and systematic contact with the State of Alabama.  Dr. Wallack is not, and has not at all

times relevant to plaintiff's claims, engaged in interstate commerce.  Dr. Wallack's

medical practice is and was at all relevant times conducted only within the borders of

Mississippi.  Dr. Wallack did not in any manner control the residence of the patients who

travel to his clinic for treatment.  Plaintiff has failed to establish that Dr. Wallack reached

out in any manner to solicit patients to his practice from Alabama or any other State.  If a

---

[11] Again it must be noted that plaintiff's contention regarding ***his*** selection of Dr. Wallack based
on the fact that Dr. Wallack possessed an Alabama medical license does not constitute action on the part
of Dr. Wallack which is required for Alabama courts to exercise *in personam* jurisdiction over him.

patient seeks to be evaluated or treated by Dr. Wallack, that patient must present himself or herself to Dr. Wallack at his clinic in Ocean Springs, Mississippi. This is exactly what plaintiff concedes happened in this case. The doctor-patient relationship was formed in Mississippi, and the performance of Dr. Wallack's duties to his patients occured wholly within Mississippi. Katelyn Hick's residency in this case was a mere fortuity and her unilateral conduct in selecting and presenting herself to Dr. Wallack cannot serve as a sufficient basis to exercise *in personam* jurisdiction over this non-resident physician. Absent some evidence that Dr. Wallack required Katelyn to fill her prescriptions and ingest her medication in Alabama, that mere fact that she did so with his knowledge is also insufficient contact with Alabama for jurisdictional purposes. As to Dr. Wallack's Alabama medical license, plaintiff has proffered no evidence that Dr. Wallack was treating Katelyn at his Mississippi clinic under any license apart from his Mississippi medical license. Consequently, plaintiff has failed to demonstrate any connection between Dr. Wallack's possession of an Alabama medical license, his only voluntary connection with Alabama, and plaintiff's claim.

For these reasons, plaintiff has failed to meet his burden to establish that, under the Alabama long arm statute, this Court can exercise personal jurisdiction over Dr. Wallack. *See*, Sloss Industries, *supra*, 488 F.3d at 925. Specifically, plaintiff has failed to establish that Dr. Wallack's contact with Alabama relates to plaintiff's cause of action, involved some act by which he purposefully availed himself of the privilege of practicing medicine in Alabama, or was such that he should reasonably have anticipated being haled into an Alabama court. *See* Posner, *supra*, 178 F.3d at 1220; DocRX, *supra*, 738 F.Supp.2d at 1245.

Finally, plaintiff has now alternatively requested that, in lieu of dismissal, that this case be transferred to the appropriate Mississippi federal court, namely the United States District Court for the Southern District of Mississippi. (Doc. 22 at 22). Dr. Wallack does not object to such a transfer. (Doc. 26 at 14.). Consequently it is recommended that plaintiff's request for a transfer be granted in the interest of justice. *See* 28 U.S.C. § 1631[12]; <u>Trujillo v. Williams</u>, 465 F.3d 1210, 1222 (10th Cir. 2006)(A court may *sua sponte* cure jurisdictional and venue defects by transferring a suit under the federal transfer statutes, 28 U.S.C. §§ 1406(a) and 1631, when it is in the interests of justice."); <u>Liriano v. United States</u>, 95 F.3d 119, 122 (2nd Cir. 1996)("The legislative history of § 1631 indicates that "Congress contemplated that the provision would aid litigants who were confused about the proper forum for review." ); <u>Hempstead County and Nevada County Project v. U.S. E.P.A.</u>, 700 F.2d 459, 462 (8th Cir. 1983)("The language of [28 U.S.C. § 1631] itself provides us with the analysis to utilize when applying the transfer provision. First, the court where the action is originally filed must find that there is a want of jurisdiction; second, the court must determine if it is in the interest of justice; and third, that court shall then transfer the action to any such court in which the action could have

_____

[12] Section 1631 of Title 28 provides:

> Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C. § 1631.

been brought at the time it was filed."); <u>Wieler v. Entrenet Nutritionals, Inc.</u>, 2004 WL 2988522, *4 (D. Minn. 2004)("Although the Court declines to find sufficient contacts to confer personal jurisdiction in Minnesota, the Court finds that the interests of justice warrant transfer of this action to the District of North Dakota. 28 U.S.C. § 1631.).

CONCLUSION

For the reasons stated above, it is the recommendation of the undersigned that the Court find insufficient contacts to confer personal jurisdiction over Dr. Wallack in Alabama but that, in the interests of justice and pursuant to 28 U.S.C. § 1631, this action be transferred to the United States District Court for the Southern District of Mississippi. It is thus recommended that Dr. Wallack's motion to dismiss be **DENIED** and that plaintiff's alternative request to transfer be **GRANTED.**

The instructions that follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this  2nd  day of May, 2012.


/s/Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

## MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
## AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
## AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

Objection.  Any party who objects to this recommendation or anything in it must, within fourteen days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a de novo determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  See 28 U.S.C. § 636(b)(1)(c); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988); Nettles v. Wainwright, 677 F.2d 404 (5th Cir. Unit B, 1982)(en banc).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within [fourteen] days [13] after being served with a copy of the recommendation, unless a different time is established by order."  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party=s arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

Transcript (applicable where proceedings tape recorded).  Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.   Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

DONE this   2nd   day of May, 2012.

/s/ Katherine P. Nelson
UNITED STATES MAGISTRATE JUDGE

---

[13] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" Fed.R.Civ.P. 72(b)(2).